Jeremy Rogers (Utah Bar No. 09731)
Attorney for Plaintiff
5416 South 550 East
Murray, Utah 84107
Telephone: 801-550-5097
Fax: 801-905-3051
*Attorney for Plaintiff*

FILED
U.S. DISTRICT COURT

2010 MAR -3 P 1: 41

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| JOHN SORENSEN, | : |
| | :     COMPLAINT |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| FIRST HORIZON HOME LOAN | : |
| CORPORATION, A DIVISION | : |
| OF FIRST TENNESSE BANK, N.A. | :    Case: 2:10cv00192 |
| AND JOHN AND JANE DOES | :    Assigned To : Benson, Dee |
| OF AN UNKNOWN NUMBER, | :    Assign. Date : 3/3/2010 |
| | :    Description: Sorensen v. First Horizon |
| | :    et al. |
| Defendants, | :    1 |

Plaintiff, John Sorensen, by and through counsel, Jeremy Rogers complains of

defendants, and for cause of action alleges as follows:

### PARTIES, JURISDICTION, VENUE

1.　　Plaintiff Matthew John Sorensen is an actual citizen of Utah, whose address is 2473

North 1180 West Pleasant Grove, Utah 84062.

2.　　Defendant first position successor First Horizon Home Loan Corporation, a Division of

First Tennessee Bank, N.A., is a Tennessee corporation, with its principle place of business in

Tennessee and at all time relevant herein was doing business in the State of Utah.

1

3.     The unnamed defendants are persons who may have or assert an interest in the subject property as investors in the obligation purportedly secured thereby, when those persons become known, those persons that qualify under diversity jurisdiction to the action will be named and notice will be given to the court and parties.

4.     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5.     The court has jurisdiction of this action pursuant to 28 USC C2201, §78B-6-401 et seq. (declaratory judgment) and §78B-6-1301 et seq. (quiet title), Utah Code Ann. 1953., and 28 USC §1332 (a).This court also has, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction over all other claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in the Central Division of the United States Court for the District of Utah, pursuant to 28 U.S.C. § 1391(c).

## BACKGROUND FACTS

7.     Plaintiff is the owner of the property located at 2473 North 1180 West Pleasant Grove, Utah 84062 in Utah County (hereinafter "the subject property"), under a deed thereto made and recorded on September 28, 2007, Entry # 141752:2007, in the Utah County Recorder's Office, a copy of which is attached hereto as Exhibit "A."

8.     On or about September 27, 2007, plaintiff executed a Promissory Note (hereinafter "the first position Note") in favor of first position Lender First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A. Defendant first position successor Beneficiary, First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A., purports to be the successor in interest thereof. On information and belief the original of said Note was then

2

retained by Lender First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A..

9.    On or about September 27, 2007, plaintiff made and delivered the Deed of Trust (hereinafter "the first position Trust Deed"), conveying the subject property in trust for the purposes recited therein to Backman Title as Trustee. Trustee James H. Woodall purports to be the successor in interest thereof and foreclosing Trustee. Said first position Trust Deed was recorded on September 28, 2007, Entry # 141752:2007, in the Utah County Recorder's Office

10.    On or about June 11, 2009, James H. Woodall, purporting to be Successor Trustee for First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A. made and delivered the Notice of Default, on behalf of First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A. Trustee James H. Woodall purports to be the successor in interest thereof and foreclosing Trustee. Said Notice of Default was recorded on October 28, 2009, Entry #113047:2009 in the Utah County Recorder's Office, a copy of which is attached hereto as Exhibit "B."

11.    On or about November 4, 2009, after the Notice of Default was executed and recorded Larry Hall, purporting to be Senior Vice President of First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A. made and delivered the Substitution of Trustee, substituting James H. Woodall as Trustee in place of Backman Title for First Horizon Home Loan Corporation for the purposes recited therein. Trustee James H. Woodall purports to be the successor in interest thereof and foreclosing Trustee. Said Substitution of Trustee was recorded on November 4, 2009, Entry #115186:2009 in the Utah County Recorder's Office, a copy of which is attached hereto as Exhibit "C."

3

12.    A Servicer was designated for the loan ("Servicer") to act as the representative/agent for the holders of the respective Note and the corresponding Trust Deed.

13.    Upon information and belief, first position Lender First Horizon Home Loan Corporation, a Division of First Tennessee Bank, N.A. (hereinafter "Lender") was provided a line of credit by undisclosed warehouse lenders, pending pooling of the first position Note (hereinafter "Note") with other such instruments, and sale of the pooled instruments as securities to unknown investors.

14.    Upon information and belief, both Lenders have been reimbursed all sums advanced by each of them in connection with their respective Note.

15.    Upon information and belief, the Lender function was limited to obtaining their respective Note, in exchange for a fee, as a preliminary step to "securitization" of the obligations under said Note as described herein.

16.    Upon information and belief, the obligations on the Note were pooled and sold by Lenders and/or a person or persons unknown as securities to numerous investors unknown.

17.    Upon information and belief, such investors and/or the person or persons unknown who sold such securities have obtained insurance against default on the underlying obligations in the form of "credit default swaps" or other similar instruments.

18.    Notwithstanding the transfer of the obligations under said Note as herein described, no transferee thereof has recorded a copy of any security agreement providing any security interest in the first position Trust Deed (hereinafter "Trust Deed") or any appropriate affidavits, pursuant to Section §70A-9a-607(2), Utah Code Ann. 1953, in order to perfect any right of enforcement under §70A-9a-607(1), Utah Code Ann. 1953.

4

19.    As a result of the transfer of the Note as part of these securities transactions, and of the lack of such recordings, Lenders and defendants are not the present holders of the respective Note or the obligees thereon, and plaintiff, and, upon information and belief, defendants, do not know who is or are the present holders of the respective Note, or the obligees thereon.

20.    The first position Trust Deed was not assigned or transferred of record until after the alleged default. The second position Trust Deed has not been assigned or transferred of record, in whole or in part.

21.    Plaintiff having a right under the Note and federal law to do so, demanded of Servicers, who purport to have a relationship in the nature of agency with persons to whom the Note and/or Trust Deeds may be assigned, and/or persons in fiduciary relationships to such assignees, all information and records showing transfer of such Note to any person or persons, for the purposes, among others, of determining the proper person(s) to receive payments under the Note, or to negotiate payment or reinstatement of the obligations, or to obtain acknowledgment of proper application of payments. No information was provided.

22.    On or about March 3, 2010, a Notice of Lis Pendens, attached hereto as Exhibit "D," was recorded on the public record by Plaintiff giving notice of the federal lawsuit filed on the same date.

### FIRST CAUSE OF ACTION: ESTOPPEL/DECLARATORY JUDGMENT

23.    Plaintiff incorporates herein by reference paragraphs 1-22 hereinabove.

24.    The Servicer of the respective Note purport in the respective Trust Deed to have a relationship in the nature of agency with persons to whom the Note and/or Trust Deed may be assigned, and/or persons in fiduciary relationships to such assignees.

25.    By permitting the respective Servicer to so represent their respective capacities, the defendant Beneficiaries (hereinafter "defendant Beneficiaries") and any respective assignees have conferred upon each respective Servicer the right and obligation to disclose and assert the interests of such assignees as necessary to protect such interests.

26.    The refusal of the Servicer, upon demand, to disclose such interests is binding upon their respective assignees.

27.    The result of such behavior by Servicer, defendant Beneficiaries, and such assignees, is to subject borrowers and their successors in title, to risks, abuses, and prejudice, and to render impossible proper discharge of the obligations on the Note.

28.    As a result of such behavior, defendant Beneficiaries, and such assignees, including those served by publication herein, are estopped to assert any present default on the Note, or power of sale under the Trust Deed.

29.    An actual controversy exists between plaintiff and defendants regarding the amenability of the subject property to sale by defendants, which may be resolved by the Court pursuant to 28 USC §2201, §78B-6-401, et seq., Utah Code Ann. 1953 (Supp. 2008).

30.    The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants, including unnamed defendants who have asserted no assignment of the Trust Deed, lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

### SECOND CAUSE OF ACTION: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

31.    Plaintiff reaffirm and reallege paragraphs 1-30 above herein as if specifically set forth more fully herein below.

6

32.     As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

33.     In violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

34.     As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC sec. 2607 (d)(2).

### THIRD CASUE OF ACTION: VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT

35.     Plaintiff reaffirm and reallege paragraphs 1-34 above hereinabove as if set forth more fully herein below.

36.     Defendants failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiff incident to the extension of credit to the Plaintiff and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z. sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d). Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.

37.     By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(c), 18(d), and 22.

38.     Defendants' failure to provide the required disclosures provides Plaintiff with the right to

rescind the transaction, and Plaintiff, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

## FOURTH CUASE OF ACTION: USURY AND FRAUD

40.    Plaintiff reaffirm and reallege the above paragraphs 1-38 hereinabove as if set forth more fully herein below. The subject loan, note, and mortgage were structured so as to create the appearance of a higher value of the real property than the actual fair market value.

41.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

42.    Defendants disguised the transaction to create the appearance of the lender being a properly chartered and registered financial institution authorized to do business and to enter into the subject transaction when in fact the real party in interest was not disclosed to Plaintiff, as aforesaid, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme.

43.    Said real party in interest, i.e., the source of funding for the loan and the person to whom the note was transmitted or eventually "assigned" was neither a financial institution nor an entity or person authorized, chartered or registered to do business in this State nor to act as banking, lending or other financial institution anywhere else.

44.    As such, this fraudulent scheme, (which was in actuality a plan to trick the Plaintiff into signing what would become a negotiable security used to sell unregulated securities under

8

fraudulent and changed terms from the original note) was in fact a sham to use Plaintiff's interest in the real property to collect interest in excess of the legal rate.

45.   The transaction involved a loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law. The "formula rate" referenced in those laws was exceeded by a factor in excess of 10 contrary to the applicable law and contrary to the requirements for disclosure under TILA and HOEPA.

46.   Under Applicable law, the interest charged on this usurious mortgage prevents any collection or enforcement of principal or interest of the note, voids any security interest thereon, and entitles the Plaintiff to recovery of all money or value paid to Defendants, plus treble damages, interest, and attorney fees.

47. Under Applicable Law Plaintiff are also entitled and demand a permanent injunction be entered against the Defendants (a) preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious, as aforesaid (b) requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record,

> (c) allowing the filing of said order in the office of the clerk of the property records
> where the subject property, "Loan transaction" and any other documents relating to
> this transaction are located and (d) dissolving any lis pendens or notice of pendency
> relating to the Defendants purported claim.

### FIFTH CAUSE OF ACTION: DECLARATORY JUDGMENT

48.   Plaintiff incorporates herein by reference paragraphs 1-47 hereinabove.

49.   Plaintiff, at any time relevant hereto, by diligent search or otherwise, could not have discovered, without the assistance of Servicer and, consequently, the named defendants, the

identities of any actual holders of the Note or obligees there under, or any interest of any such holder.

50.     In the event that any investor in the obligations under the Note, or any assignee of an interest in the Note, did not obtain assignment of the Trust Deed, the obligations of the Note have, to that extent, become unsecured, and the Note and Trust Deed, may not be foreclosed.

51.     An actual controversy exists between plaintiff and defendants regarding the amenability of the subject property to sale by defendants, which may be resolved by the Court pursuant to 28 USC §2201, §78B-6-401, Utah Code Ann. 1953.

52.     The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants, including unnamed defendants who are not assignees of the Trust Deeds, lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

### SIXTH CAUSE OF ACTION: QUIET TITLE

53.     Plaintiff incorporates herein by reference paragraphs 1-52 hereinabove.

54.     The transfer of the Note as part of securities, subjects plaintiff to potential multiple and unpredictable recoveries or attempts to recover, against the subject property.

55.     The failure of Beneficiaries and Trustee to retain any interest in the obligations under the Note voided any title or power they might have under the Trust Deeds, and rendered the Trust Deed unenforceable by them.

56.     The inability of plaintiff to safely discharge any lien of the Trust Deed against the subject property in favor of assignees of interests in the Note and Trust Deeds, and the threat of multiple recoveries or attempts to recover against the subject property constitute a cloud on plaintiff's title which can only be removed by requiring all such assignees to appear and assert their interests

and the extent to which any obligation owing to them has not been discharged by payment, including collections on insurance against default, or, failing such assertion of claims, entry of a decree of quiet title freeing the subject property from the lien of such obligations.

57.     The Court, pursuant to §78B-6-1301 et seq., Utah Code Ann (1953) (Supp. 2008), should enter its Order herein forthwith quieting title to the subject property in Plaintiff and against defendants, including all those served by publication, freeing title to the subject property of the lien of the Trust Deed and leaving any obligations under the Note unsecured by any interest in the subject property.

## SEVENTH CAUSE OF ACTION: REFUND, FEES AND COSTS

58.     Plaintiff incorporates herein by reference paragraphs 1-57 hereinabove.

59.     The Trust Deed has been unenforceable by defendant Beneficiaries and Trustee from the first transfer of the Note as set out hereinabove.

60.     Defendant Beneficiaries' assertions to the Court herein that it holds and is entitled to enforce the obligations of the Note would constitute a fraud upon the Court, subjecting defendants to sanctions and imposition of fees and costs under §78-5-825, U.C.A. (1953).

61.     The Court should enter its Order herein forthwith to Defendant Beneficiaries, jointly and severally, to pay to plaintiff its fees and costs, together with a reasonable attorney's fee, to be shown by affidavit, and to reimburse to plaintiff unnecessary fees and charges under the Note and Trust Deed.

Wherefore, plaintiff prays that the court enter its Order herein:

1.     Declaring that the Trust Deed is not a lien against the subject property, ordering the immediate release of the Trust Deed of record, and quieting title to the subject property in

plaintiff against defendants and all claiming by, through, or under them, including unnamed defendants served by publication;

2.    Refunding to plaintiff from Defendant Beneficiaries, jointly and severally, all fees and charges paid under the Trust Deeds, and awarding plaintiff its cost of the action, including a reasonable attorney's fee; and

3.    For such other and further relief as the court deems just in the premises.

RESPECTFULLY submitted on March 3, 2010.

_____
Jeremy Rogers, Attorney for Plaintiff

# Exhibit "A"

Return To:
FHHL - POST CLOSING MAIL ROOM

1555 W WALNUT HILL LN #200 MC 6712
IRVING, TX 75038

ENT 141752:2007 PG 1 of 21
RANDALL A. COVINGTON
UTAH COUNTY RECORDER
2007 Sep 28 4:10 pm FEE 50.00 BY CS
RECORDED FOR BACKMAN OREM
ELECTRONICALLY RECORDED

Prepared By:
FIRST HORIZON HOME LOANS,
A DIVISION OF FIRST TENNESSEE BANK N.A.
6965 UNION PARK CENTER, #300
COTTONWOOD HEIGHTS, UT 84047

BTS7-014832 ——————[Space Above This Line For Recording Data]——————

0062011366

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated    September 25th, 2007                ,
together with all Riders to this document.
(B) "Borrower" is
    JOHN SORENSEN, A Married Man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is FIRST HORIZON HOME LOANS,
    A DIVISION OF FIRST TENNESSEE BANK N.A.
Lender is a  NATIONAL BANK
organized and existing under the laws of   THE UNITED STATES OF AMERICA

**UTAH**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                Form 3045 1/01

-6(UT) (0005)
Page 1 of 16                     Initials: 
VMP MORTGAGE FORMS - (800)521-7291

ENT **141752:2007** PG 2 of 21

Lender's address is  4000 HORIZON WAY, IRVING, TEXAS 75063

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is  BACKMAN TITLE

**(E) "Note"** means the promissory note signed by Borrower and dated  September 25th, 2007
The Note states that Borrower owes Lender
ONE MILLION FIVE HUNDRED THOUSAND & 00/100                                                    Dollars
(U.S. $      1,500,000.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  January 1st, 2039       .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | CONSTRUCTION LOAN RIDER |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0062011366
☼☼☼ -6(UT) (0005)                                    Page 2 of 15            Initials: _____            Form 3045  1/01

ENT **141752:2007** PG 3 of 21

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County                                    of Utah                                    :
    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LOT 9, PLAT "A", MURPHY MEADOWS SUBDIVISION, PLEASANT GROVE, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE UTAH COUNTY RECORDER.
46-715-0009

Tax Serial Number: County: 467150009 City: N/A          which currently has the address of
2473 NORTH 1180 WEST                                                        [Street]
PLEASANT GROVE                              [City], Utah    84062        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant, convey and warrant the Property and that the Property is unencumbered, except for encumbrances of record. Borrower further warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0062011366                                                Initials:
-6(UT) (0005)                        Page 3 of 16                        Form 3045  1/01

ENT **141752:2007** PG 4 of 21

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

0062011366

-6(UT) (0005)                                    Page 4 of 16                    Initials: ___                    Form 3045  1/01

ENT **141752:2007** PG 5 of 21

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

0062011366

-6(UT) (0005)                    Page 5 of 16                    Initials: _____                    Form 3045  1/01

ENT **141752:2007** PG 6 of 21

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied

0062011366
@⍣ -6(UT) (0005)                                    Page 6 of 15              Initials: _____              Form 3045  1/01

Case 2:10-cv-00192-DB    Document 1    Filed 03/03/2010    Page 20 of 41

ENT **141752:2007** PG 7 of 21

to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0062011366

-6(UT) (0005)                Page 7 of 15              Initials: _____        Form 3045  1/01

ENT **141752:2007** PG 8 of 21

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0062011366
ⓦⓑ -6(UT) (0005)                    Page 8 of 15                    Initials: _____                    Form 3045  1/01

ENT **141752:2007** PG 9 of 21

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0062011366

-6(UT) (0005)                                    Page 9 of 16                    Initials: [signature]                    Form 3045  1/01

ENT **141752:2007** PG 10 of 21

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0062011366

-6(UT) (0005)                    Page 10 of 15          Initials: &          Form 3045 1/01

ENT **141752:2007** PG 11 of 21

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

0062011366
-6(UT) (0005)                                    Page 11 of 15                          Initials: _____                   Form 3045   1/01

ENT **141752:2007** PG 12 of 21

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0062011366

-6(UT) (0005)                          Page 12 of 15          Initials:                Form 3045  1/01

ENT **141752:2007** PG 13 of 21

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. In the event Borrower does not cure the default within the period then prescribed by Applicable Law, Trustee shall give public notice of the sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines (but subject to any statutory right of Borrower to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold). Trustee may in accordance with Applicable Law, postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

0062011366

-6(UT) (0005)                          Page 13 of 15              Initials: _____              Form 3045  1/01

ENT **141752:2007** PG 14 of 21

25. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                 JOHN SORENSEN              -Borrower

_____        _____ (Seal)
                                                           -Borrower

_____ (Seal)         _____ (Seal)
                 -Borrower                                  -Borrower

_____ (Seal)         _____ (Seal)
                 -Borrower                                  -Borrower

_____ (Seal)         _____ (Seal)
                 -Borrower                                  -Borrower

0062011366

(UM)-6(UT) (0005)              Page 14 of 15                Form 3045  1/01

ENT **141752:2007** PG 15 of 21

STATE OF UTAH,                    UTAH                    County ss:

The foregoing instrument was subscribed and sworn to and acknowledged before me this

_17th day of_ ___ September, 2007, by

JOHN SORENSEN

My Commission Expires: _02/26/2010_

NOTARY PUBLIC
Candida W. Su'a-Filo
765 East 340 South, Ste 105
American Fork, Utah 84003
My Commission Expires
February 26, 2010
STATE OF UTAH

Notary Public
Residing at: _PG, UT_

0062011366
-6(UT) (0005)                    Page 15 of 15        Initials: ___        Form 3045  1/01

ENT **141752:2007** PG 16 of 21

## TO BE RECORDED WITH THE SECURITY INSTRUMENT

LENDER: FIRST HORIZON HOME LOANS,                                    0062011366
         A DIVISION OF FIRST TENNESSEE BANK N.A.
BORROWER: JOHN SORENSEN

PROPERTY: 2473 NORTH 1180 WEST
          PLEASANT GROVE, Utah 84062

### RESIDENTIAL CONSTRUCTION LOAN RIDER
### INCLUDING SECURITY AGREEMENT TO THE DEED OF TRUST/MORTGAGE

       **THIS RESIDENTIAL CONSTRUCTION LOAN RIDER** shall be deemed to amend and supplement the Deed of Trust/Mortgage (the "**Security Instrument**"), of the same date given by the undersigned (the "**Borrower**") to secure Borrower's Note ("**Note**") and Addendum to Note to Lender of the same date and covering the property ("**Property**") described in the Security Instrument. All terms defined in the Note and elsewhere in the Security Instrument shall have the same meaning in this Rider.

       **AMENDED AND ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

       1.     **Residential Construction Loan Agreement.** Borrower agrees to comply with the covenants and conditions of the Residential Construction Loan Agreement ("**Loan Agreement**") between Borrower and Lender, which is incorporated herein by this reference and made a part of this Security Instrument. The **Loan Agreement** provides for the construction of certain Improvements ("**Improvements**") on the **Property**. All advances made by **Lender** pursuant to the **Loan Agreement** shall be an indebtedness of **Borrower** secured by this **Security Instrument** as amended and such advances may be obligatory under the terms of the **Loan Agreement**. The **Security Instrument** secures the payment of all sums and the performance of all covenants required by the **Lender** in the **Loan Agreement**. Upon the failure of **Borrower** to keep and perform all the covenants, conditions and agreements of the **Loan Agreement**, the principal sum and all interest and other charges provided for in the loan documents and secured hereby shall, at the option of the **Lender**, become due and payable.

       2.     **Construction Loan Deed of Trust/Mortgage.** This **Security Instrument** is a "construction mortgage" securing an obligation incurred for the construction of **the Improvement** on the **Property** including the acquisition cost of the **Property**, if any, and any notes issued in extension, renewal, or substitution thereof. **Borrower** affirms, acknowledges and warrants that prior to the recordation of this

RCLA Rider to Security Instrument                Page 1 of 5                                    8/2003 FH6D16X

ENT **141752:2007** PG 17 of 21

Security Instrument, as amended, in the Real Property Records of the county or counties where the Property is located, no Improvements contemplated by the Loan Agreement have been constructed, no work has been performed, and no materials have been ordered or delivered.

      3.    **Future Advances.** This Security Instrument shall secure in addition to the sum evidenced by the Note all funds hereafter advanced by Lender to or for the benefit of Borrower, as contained in the Contract and/or due under the Loan Agreement and all indebtedness or obligations presently or hereafter owed by Borrower to Lender, however arising, whether by note, contract, tort, guaranty, operation of law or otherwise; whether or not the advances or events creating such debts or obligations are presently foreseen; and regardless of the class of debts or other obligations, be they secured or unsecured or arising from commercial, credit card or consumer transactions; or for any other purpose. All future advances shall be made within the time limit authorized by the laws of the State of Utah

      4.    **Disbursements to Protect Security.** All sums disbursed by Lender prior to completion of the Improvements to protect the security of this Security Instrument, up to the principal amount of the Note and any future advances, shall be treated as disbursements pursuant to the Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note and the Addendum to the Note, unless the collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefore.

      5.    **Assignment of Rights or Claims.** From time to time as Lender deems necessary to protect Lender's interest, Borrower shall, upon request of Lender, execute, acknowledge before a notary, and deliver to Lender, assignments of any and all rights or claims which relate to the construction on the Property.

      6.    **Breach by Borrower.** In case of breach by Borrower of the covenants and conditions of the Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (a) may invoke any of the rights or remedies provided in the Loan Agreement, or (b) may accelerate the sums secured by this Security Instrument and invoke any of those remedies provided for in this Security Instrument, or (c) may do both although failure to exercise any of its rights and remedies at any one time does not constitute a waiver or modification of any conditions, rights or remedies in the future.

      7.    **Amortization and Loan Agreement.** After the commencement of amortization of the Note, the terms of the Loan Agreement shall be deemed to have been satisfied. There shall be no claim or defense arising out of or in connection with the Loan Agreement against the obligations of the Note and this Security Instrument.

      8.    **Property.** The property covered by this Security Instrument includes the property described or referred to in this Security Instrument, together with the following, all of which are referred to as the "**Property**". The portion of the Property described below which constitutes real property is sometimes referred to as the "**Real Property**". The portion of the Property which constitutes personal property is sometimes referred to as the "**Personal Property**", listed as follows:

      Any and all buildings, Improvements (provided in the Loan Agreement or otherwise), and tenements now or hereafter erected on the Property; any and all heretofore and hereafter vacated alleys
0062011366

RCLA Rider to Security Instrument          Page 2 of 5          8/2003  FH6D16Y

and streets abutting the Property, easements, rights, appurtenances, rents (subject however to any
assignment of rents to **Lender**), leases, royalties, mineral, oil and gas rights and profits, water, water
rights and water stock appurtenant to the **Property** (to the extent they are included in **Borrower's** fee
simple title); any and all fixtures, machinery, equipment, building materials, appliances, and goods of
every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection
with the **Property** and all replacements and accessions of them, including, but not limited to, the
following items, which are hereby recognized by the parties to this instrument as fixtures: appliances for
the purpose of supplying or distributing heating, cooling, electricity, gas, water, air and light; security
and access control apparatus; plumbing and plumbing fixtures; refrigerating, cooking and laundry
equipment; carpet, floor coverings and interior and exterior window treatments; furniture and cabinets;
interior and exterior sprinkler plant and lawn maintenance equipment; fire prevention and extinguishing
apparatus and equipment, water tanks, swimming pool, compressor, vacuum cleaning system, disposal,
dishwasher, range, and oven, any shrubbery and landscaping; any and all plans and specifications for
development of or construction of **Improvements** upon the **Property**; any and all contracts and
subcontracts relating to the **Property**; any and all accounts, contract rights, instruments, documents,
general intangibles, and chattel paper arising from or by virtue of any transactions related to the
**Property**; any and all permits, licenses, franchises, certifications, and other rights and privileges
obtained in connection with the **Property**; any and all products and proceeds arising from or by virtue of
the sale, lease, or other disposition of any of the **Property**; any and all proceeds payable or to be payable
under each policy of insurance relating to the **Property**; any and all proceeds arising from the taking of
all or part of the **Property** for any public or quasi-public use under any law, or by right of eminent
domain, or by private or other purchase in lieu thereof; all building permits, certificates of occupancy,
certificates of compliance, any right to use utilities of any kind including water, sewage, drainage and
any other utility rights, however arising whether private or public, present or future, including any
reservation, permit, letter, certificate, license, order, contract or otherwise and any other permit, letter,
certificate, license, order, contract or other document or approval received from or issued by any
governmental entity, quasi-governmental entity common carrier, or public utility in any way relating to
any part of the **Property** or the **Improvements**, fixtures and equipment thereon; all other interests of
every kind and character which **Borrower** now has or at any time hereafter acquires in and to the
**Property**, including all other items of property and rights described elsewhere in this **Security
Instrument**.

   9.    **Security Instrument.** This **Security Instrument** shall be a security agreement granting
**Lender** a first and prior security interest in all of **Borrower's** right, title and interest in, to and under the
**Personal Property**, under and within the meaning of applicable statues of this state, located on or
acquired for installation on or used in the operation of the real property, including, but not limited to, all
construction materials, goods, equipment and fixtures, and all accessions, additions and replacements
thereof. As well as a mortgage granting a lien upon and against the **Real Property**. In the event of any
foreclosure sale all of the **Real and Personal Property** may, at the option of **Lender**, be sold as a whole
or in any part. It shall not be necessary to have present at the place of such sale the **Personal Property**
or any part thereof. **Lender** shall have all the rights, remedies and recourses with respect to the **Personal
Property** afforded to a "Secured Party" by the applicable statutes of this state in addition to and not in
limitation of the other rights and recourse afforded **Lender** under this **Security Instrument**. **Borrower**
shall, upon demand, pay *to* **Lender** the amount of any and all expenses, including the fees and
disbursements of **Lender's** legal counsel and of any experts and agents which **Lender** may incur in
connection with: (i) the making and/or administration of this **Security Instrument**; (ii) the custody,
preservation, use or operation of, or the sale of, collection from, or other realization upon any property,
real and/or personal, described in this **Security Instrument**, (iii) the exercise or enforcement of any of
0062011366

RCLA Rider to Security Instrument            Page 3 of 5                    8/2003 FH6D16Z

ENT **141752:2007** PG 19 of 21

the rights of **Lender** under this **Security Instrument**; or (iv) the failure by **Borrower** to perform or observe any of the provisions or covenants in this **Security Instrument**.

10.    **Completion.**    **Lender** shall not be responsible for the completion of the **Improvements**, and shall not in any way be considered a guarantor or surety of performance by **Borrower**. In the event the **Improvements** are not completed according to the Plans and Specifications approved by **Lender**, and it is determined for whatever reason the **Lender** does not have a lien arising by or through **Borrower**, then **Lender** shall have a valid lien for its loan amount, less the amount reasonably necessary to complete the **Improvements**, or in such event **Lender**, at its option, shall have the right to complete the **Improvements**, and the lien shall be valid for the loan amount. **Paragraph 6 of the Security Instrument**. The first sentence of paragraph 6 of the **Security Instrument** is hereby modified to read as follows: **Borrower** shall occupy, establish and use the **Property** as **Borrower's** principal residence within sixty (60) days from the execution of the **Modification Agreement** and shall continue to occupy the **Property** as **Borrower's** principal residence for at least one (1) year after the date of occupancy, unless **Lender** otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond **Borrower's** control. All other provisions in **Paragraph 6 of the Security Instrument** remain unchanged.

11.    **Invalid Provisions.** If any provision of this **Security Instrument** is declared invalid, illegal, or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provision shall be severed from this **Security Instrument** and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this **Security Instrument**.

12.    **Address.**

The name and address of the **Borrower/Debtor** during construction of the **Improvements** is: JOHN SORENSEN
             2473 NORTH 1180 WEST
             PLEASANT GROVE, Utah 84062

The name and address of the **Lender/Secured Party** is:
FIRST HORIZON HOME LOANS,
A DIVISION OF FIRST TENNESSEE BANK N.A.
6965 UNION PARK CENTER #300
MIDVALE, UT 84047

13.    **Other Provisions.** The following notice is required by law:

IMPORTANT NOTICE: YOU ARE HEREBY NOTIFIED THAT ANY PERSON PERFORMING LABOR ON YOUR PROPERTY OR FURNISHING MATERIALS FOR THE CONSTRUCTION, REPAIR, OR IMPROVEMENT OF YOUR PROPERTY WILL BE ENTITLED TO A LIEN AGAINST YOUR PROPERTY IF HE IS NOT PAID IN FULL, EVEN THOUGH YOU MAY HAVE PAID THE FULL CONTRACT PRICE TO YOUR CONTRACTOR. THIS COULD RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE. THIS LIEN CAN BE ENFORCED BY THE SALE OF YOUR PROPERTY. TO AVOID THIS RESULT, YOU MAY DEMAND FROM YOUR CONTRACTOR LIEN WAIVERS FROM ALL PERSONS PERFORMING LABOR OR FURNISHING MATERIALS FOR THE WORK ON YOUR PROPERTY. YOU MAY WITHHOLD PAYMENT TO THE CONTRACTOR IN THE AMOUNT OF ANY UNPAID CLAIMS FOR LABOR

0062011366
RCLA Rider to Security Instrument                    Page 4 of 5                    8/2003 FH6D17A

ENT **141752:2007** PG 20 of 21

FOR MATERIALS. YOU ALSO HAVE THE RIGHT TO DEMAND FROM YOUR CONTRACTOR A COMPLETE LIST OF ALL LABORERS AND MATERIAL SUPPLIERS UNDER YOUR CONTRACT, AND THE RIGHT TO DETERMINE FROM THEM IF THEY HAVE BEEN PAID FOR LABOR PERFORMED AND MATERIALS FURNISHED.

     By signing below, Borrower accepts and agrees to the terms and covenants contained in this Residential Construction Loan Rider.

Borrower  JOHN SORENSEN

Borrower

Borrower

Borrower

Acknowledgments Attached

Please attach the Appropriate County/State Specific Notary Acknowledgment

0062011366
RCLA Rider to Security Instrument          Page 5 of 5          8/2003 FH6D17B

SEP-26-2007  11:22  FROM  PABLO DISTRICT OFFICE  TO  BUDDI  P.06

ENT **141752:2007** PG 21 of 21

## (BORROWER'S ACKNOWLEDGEMENT)

**STATE OF:** _Utah_ }

**COUNTY OF:** _Utah_ }

**SUBSCRIBED AND SWORN TO BEFORE ME**

**THIS** _27th_ **DAY OF** _September_ , _2007_

**MY COMMISION EXPIRES:** _02/26/2010_

_Candida W Su'a filo_

**NOTARY PUBLIC**

_CANDIDA W. SUA-FILO_

**PRINTED NAME ON NOTARY**



NOTARY PUBLIC
Candida W. Su'a-Filo
795 East 340 South, Ste 105
American Fork, Utah 84003
My Commission Expires
February 26, 2010
STATE OF UTAH

# Exhibit "B"

WHEN RECORDED RETURN TO:

James H. Woodall
10653 River Front Parkway, Suite 290
South Jordan, Utah 84095
Telephone: (801) 254-9450
Hours: 8:00 a.m, – 5:00 p.m.
*5248914/4390219*

ENT **113047:2009** PG 1 of 1
**Rodney D. Campbell**
**UTAH COUNTY RECORDER**
2009 Oct 28 2:50 pm FEE 10.00 BY SS
RECORDED FOR FIRST AMERICAN – MAIN
ELECTRONICALLY RECORDED

---

Trustee Sale Number: 09-ALS-39          Loan Number: 62011366          APN: 46-715-0009

**NOTICE OF DEFAULT**
(Successor Trustee)

NOTICE IS GIVEN that JAMES H. WOODALL, as Trustee under that certain Deed of Trust made as of September 25, 2007 (the "Deed of Trust") executed by JOHN SORENSEN, A MARRIED MAN, as Grantor, in which BACKMAN TITLE as Trustee, and FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK N.A. as Beneficiary (together with its successors and assigns) recorded on September 28, 2007, as Entry No. 141752:2007, Official Records of UTAH County, Utah, describing the following real property:

> LOT 9, PLAT "A", MURPHY MEADOWS SUBDIVISION, PLEASANT GROVE, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE UTAH COUNTY RECORDER.

A breach or default in the obligation for which said Deed of Trust was conveyed as security has occurred as follows:

> Failure to pay the installment of principal and/or interest due June 1, 2009 along with all subsequent installments, failure to complete improvements as described in the Residential Construction Loan Agreement by the Permanent Mortgage Date (as defined in the Residential Construction Loan Allonge to Note executed by the borrower).

By reason of such defaults, the current beneficiary of the Deed of Trust (the "Beneficiary") has instructed the trustee to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED October 27, 2009

JAMES H. WOODALL, TRUSTEE

STATE OF UTAH          )
                       : ss.
SALT LAKE COUNTY       )

The foregoing instrument was acknowledged before me this ⊙7 day of October 2009 by James H. Woodall in his authorized capacity.

NOTARY PUBLIC

Notary Public
CINDY HANSEN
Commission #698115
My Commission Expires
June 1, 2011
State of Utah

# Exhibit "C"

WHEN RECORDED RETURN TO:

James H. Woodall
10653 River Front Parkway, Suite 290
South Jordan, Utah 84095
Telephone: (801) 254-9450
Hours: 8:00 a.m. – 5:00 p.m.

5248914/4290219

ENT 115186:2009 PG 1 of 1
Rodney D. Campbell
UTAH COUNTY RECORDER
2009 Nov 04 2:14 pm FEE 10.00 BY CS
RECORDED FOR FIRST AMERICAN – MAIN
ELECTRONICALLY RECORDED

---

Trustee Sale Number: 09-ALS-39          Loan No. 62011366          APN. 46-715-0009

### SUBSTITUTION OF TRUSTEE

NOTICE IS HEREBY GIVEN that JAMES H. WOODALL is hereby appointed Successor Trustee Under a Deed of Trust executed by JOHN SORENSEN, A MARRIED MAN, as Grantor, in which BACKMAN TITLE as Trustee, and FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK N.A. as Beneficiary (together with its successors and assigns), recorded on September 28, 2007, as Entry No. 141752:2007, Official Records of UTAH County, Utah, describing the following real property:

> LOT 9, PLAT "A", MURPHY MEADOWS SUBDIVISION, PLEASANT
> GROVE, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF ON
> FILE AND OF RECORD IN THE UTAH COUNTY RECORDER.

The undersigned Beneficiary hereby ratifies and confirms any and all actions taken on the beneficiary's behalf by the Successor Trustee prior to the recording of this Substitution of Trustee.

DATED: October 26, 2009

First Horizon Home Loan Corporation, a Division of
First Tennessee Bank National Association

By: _____
Name: Larry Hall
Title: Senior Vice President

### CORPORATE ACKNOWLEDGMENT

STATE OF TEXAS           )
                         : ss.
COUNTY OF DALLAS         )

On October 26, 2009, before me, Melissa Ann Hilliard Notary Public, personally appeared Larry Hall, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

MELISSA ANN HILLIARD
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-16-2011

# Exhibit "D"

Jeremy Rogers (Utah Bar No. 09731)
Attorney for Plaintiff
5416 South 550 East
Murray, Utah 84107
Telephone: 801-550-5097
Fax: 801-905-3051
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| JOHN SORENSEN | : | |
| | : | LIS PENDENS |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FIRST HORIZON HOME LOANS, A DIVISION | : | |
| OF FIRST TENNESSE BANK, N.A. | : | |
| CORPORATION, AND JOHN AND JANE DOES | : | |
| OF AN UNKNOWN NUMBER, | : | Case No. |
| | : | |
| Defendants. | : | Honorable |

**LIS PENDENS**

Notice is hereby given that there is pending in the UNITED STATES DISTRICT COURT,

DISTRICT OF UTAH, the above-captioned action to quiet the title to realty against all persons

who have or claim an interest therein, respecting the property known as 2473 North 1180 West

Pleasant Grove, Utah 84062 and described as:

LOT 9, PLAT "A", MURPHY MEADOWS SUBDIVISION, PLEASANT GROVE,
UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF
RECORD IN THE UTAH COUNTY RECORDER'S OFFICE.

1

Jeremy Rogers,
Attorney at Law

Subscribed, sworn to, and affirmed before me this 3 day of MARCH , 2010. By
Peter Juhlin who provided to me on the basis of staisfactory evidence to be a natural person who
appeared before me.

Notary Public



KIRSTEN CURRAN
NOTARY PUBLIC·STATE OF UTAH
COMMISSIONS 580216
COMM. EXP. 12-19-2012

2